NICHOLSON et al., Appellants, v. WM. A. STICKNEY CIGAR COMPANY.

Division One, November 12, 1900.

Trade Marks: DISSIMILARITY: DECEPTION. There has been no infringement by one manufacturer of cigars on the trade-mark of another when there is no such similitude between the two trade-marks as would deceive any one. If a purchaser would not be likely to buy one cigar under a belief created by the trade-mark that he was buying the other, there has been no infringement.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Frank K. Ryan* for appellants.

(1) The court below erred in deciding against appellants upon the theory that to constitute infringement there

must be a resemblance almost amounting to a criminal counterfeit. The learned trial judge having said: "If defendant intended to deceive it would have adopted a trade-mark as closely resembling that of plaintiffs as it could possibly make it, and avoid the penalty of too close a resemblance." But we respectfully submit that no such similarity is required. There may be infringement when the labels are entirely different. It is often held sufficient that the trade-mark name is alone appropriated. Here it was enough for the appellants to have shown either that pictures of the Union Station, or that the words "Union Station" were taken; but they proved that both had been exploited by the respondent. Fuller v. Huff, 62 Alb. L. J. 58; Collins Co. v. Oliver Ames & Sons Corp., 18 Fed. Rep. 561; Church & Dwight Co. v. Russ, 99 Fed. Rep. 276; Fairbank v. Luckel, K. & C. S. Co., 102 Fed. Rep. 327; Bass v. Fiegenspan, 96 Fed. Rep. 206; Johnson & Johnson v. Bauer & Block, 82 Fed. Rep. 662; Manchester Brewery Co. v. North Cheshire and Manchester Brewery Co., 67 Law J. Ch. 351; Cochran v. McNish, 1 Appeal Cases, L. R. (H. of L. 1896), 225. (2) The court below correctly held that a pictorial representation of the Union Station, Saint Louis, could be a valid trade-mark. In re Hyde & Co., 7 Ch. Div. 724; Cox's Manual, No. 593; Bartlett's Digest, p. 149; Patent Office O. G. 1870, p. 410, No. 2470; Bartlett's Digest, p. 26; Browne on Trade Marks, sec. 87; Bartlett's Digest, p. 88; Bartlett, p. 146; Browne on Trade Marks, secs. 258-259. (3) The court below erred in virtually holding that it was necessary for the plaintiffs to show affirmatively that they were authorized by the Saint Louis Terminal Railroad Association to use a picture of the Union Station as a trade-mark. Messerole v. Tynberg, 4 Abb. Pr. U. S. 410; Cox's Manual, No. 300; In re Wendt & Rammelsberg, U. S. Registration No. 485; Browne on Trade Marks, sec. 68.

*W. B. Homer* for respondent.

(1)   In all cases where rights to exclusive use of a trade-mark are invaded it is invariably held that the essence of the wrong consists in the sale of goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that a party who appeals to a court of equity can have relief.   This is the doctrine of all the authorities.   The foregoing proposition is equally true when applied to what is termed unfair or fraudulent competition in business.   Oakes v. Candy Co., 146 Mo. 400; Canal Co. v. Clark, 13 Wall. 322; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 546; Stocking Co. v. Mack, 12 Fed. Rep. 710; Skinner v. Oakes, 10 Mo. App. 54; McLean v. Fleming, 96 U. S. 245; Columbia Mill Co. v. Alcorn, 150 U. S. 460; Hubinger v. Eddy, 74 Fed. Rep. 551. (2)   To justify an injunction the resemblance in the trade-marks or labels and packages must be sufficiently close to raise the probability of mistake on the part of the public, and a design and purpose to mislead and deceive on the part of the defendant, and the devices must be so similar that any person with such reasonable care and observation  as the public generally under the circumstances are capable  of using and may be expected to exercise, would mistake one for the other.   McCartney v. Garnhart, 45 Mo. 595; Tobacco Co. v. Tobacco Co., 104 Mo. 53; Am. Brewing Co. v. St. Louis Brewing Co., 47 Mo. App. 14; Bull v. Siegel, 116 Ill. 137; Liggett v. Finzer, 128 U. S. 182; McLean v. Fleming, 96 U. S. 245; Columbia Mill Co. v. Alcorn, 150 U. S. 460; Brown v. Beucher, 6 Oh. N. P. 379; Lorillard v. Peper, 86 Fed. Rep. 958; Gilman v. Hunnewell, 122 Mass. 148.   (3)   The words "Union Station" are common to the whole world and can not be appropriated as a trade-mark.   The same must be true of a pictorial representation of the Union Station.   Isaacs

v. Daly, 39 Sup. Ct. (7 I. and S.), 511; Osgood v. Allen, 1 Holmes 185; Gray v. Coch, 2 Mich. (N. P.) 119; Candee v. Deene, 54 Ill. 439, 5 Am. Rep. 125; Town v. Stetson, 5 Abb. Pr. 218; Beard v. Turner, 13 L. T. 746; Colonial Life Ass. Co. v. Home & Colonial Ass. Co., 33 Beav. 548, 10 L. T. (N. S.) 448.

MARSHALL, J.—This is a proceeding in equity to enjoin the defendant from infringing the plaintiff's trademark and for damages therefor.

The plaintiffs adopted a trade-mark and registered the same with the Secretary of State on the eleventh of August, 1894. The defendant adopted a trade-mark and registered it with the Secretary of State on the thirteenth of November, 1895. The plaintiffs' trade-mark briefly stated is: On the outside of the top of the box the words "Union Station, St. Louis" with the letters "D. N." are burnt into the wood. Below is a paper label with the words "Extra Fina." On the right end of the box is a large label containing a picture of the St. Louis Union Station. On the front side of the box the words "Union Station" are burnt into the wood. When the top of the box is raised there appears a large paper label, being a picture of the Union Station, taken from Eighteenth and Market streets, with a view of these streets. On the inside of the box there is a paper label on the rear end thereof with the words "Union Station, St. Louis," in large type.

The defendant's trade-mark is this: On the top of the box the words "The Gilpin, Union Station" with a small picture of the Union Station stamped on the box. On the right end of the box there is a paper label with the words "The Union Station, Gilpin," and a small picture of the Union Station between the words "The Union Station" and "Gilpin." On the front side of the box the word "Invincibles"

Vol. 158 mo—11

is burnt into the box. On the left end of the box the words "Colorado Clara" are stamped. When the top of the box is opened a large paper label appears, on the upper left hand corner thereof is a small picture of the Union Station, taken from Eighteenth and Market streets with a view of those streets. Diagonally across the face of the trade-mark on the inside of the top of the box, the words "The Gilpin" appear in large red letters. On the right lower quarter there is a scroll with the words "Union Station," beneath which in a straight line in plain type appear the words "Wm. A. Stickney Cigar Co., St. Louis." On the rear inside end of the box the words "Wm. A. Stickney Cigar Co." appear in large red letters.

When the boxes are viewed, either with the tops closed or opened there is no such similarity between the appearance of the two trade-marks as would be calculated to deceive even the most unwary purchaser, or be calculated to induce a reasonable belief in the mind of the most unobservant purchaser that the same cigar was being offered for sale.

The circuit court dismissed the bill, and plaintiffs appeal.

I.

The briefs of counsel on both sides are exceedingly full and evidence marked ability and deep research. Many propositions are discussed and the authorities in support cited and elaborated. In the view we take, however, the case lies within a very small compass and there is scarcely any diversity of opinion in the precedents or between counsel as to the law applicable thereto.

In Filley v. Fassett, 44 Mo. l. c. 176 et seq., the rule was clearly stated as follows: "The books are full of authorities establishing the proposition that any contrivance, design, device, name, symbol, or other thing, may be employed as a

trade-mark which is adapted to accomplish the object proposed by it—that is, to point out the true source and origin of the goods to which said mark is applied, or even to point out and designate a dealer's place of business, distinguishing it from the business locality of other dealers. The mark, however, must possess the requisite characteristics, pointing out the source and origin of the goods, and not be merely descriptive of the style, quality, or character of the goods themselves . . . . . . If the name . . . . . . . .was calculated to mislead, the intention to deceive is to be inferred therefrom."

"The imitation of an original trade-mark need not be exact or perfect. It may be limited and partial; nor is it requisite that the whole should be pirated. Nor is it necessary to show that any one has in fact been deceived, or that the party complained of made the goods . . . . . . . Nor is it necessary to prove intentional fraud. 'If the court sees that complainant's trade-marks are simulated in such a manner as probably to deceive customers or patrons of his trade or business, the piracy should be checked at once by injunction.' " [Ibid., p. 178.]

The first crucial test is whether the trade-mark complained of is calculated to and probably will mislead ordinary purchasers into believing that the goods are manufactured by the complainant. [Browne on Trade-Marks, secs. 33, 43, 309, 328.] Exact similitude is not necessary. [Ibid. secs. 28 and 385.] Nor is the comparative value of the goods a controlling criterion. [Ibid., secs. 35, 344, 401, 496, and 505.]

In McCartney v. Garnhart, 45 Mo. l. c. 595, it was aptly said: "To justify an injunction, as prayed by the plaintiffs, it should at least appear that the resemblance between the two brands was sufficient to raise the probability of mistake on the part of the public, or design and purpose to mislead and deceive on the part of the defendant."

In Liggett & Meyers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. l. c. 60, BLACK, J., said: "The general principles of the law concerning trade-marks are well settled.   A person has a right to the exclusive use of marks, forms or symbols appropriated by him for the purpose of pointing out the true origin or ownership of the article manufactured by him.   The limitation upon this right is that such designs or words may not be used for the simple purpose of naming or describing the quality of the goods; for to permit that would be to foster a monopoly, while the great purpose of the law of trade-marks is to protect the owner in the exclusive use of his device which distinguishes his product from other similar articles, and to protect the public against fraud and deception.   Any contrivance, design, device, name or symbol may be used as a trade-mark for the purpose of pointing out the true source and origin of the goods to which it is affixed. Under some circumstances the name of a place may be used as a trade-mark.   The law is also well settled that one who has appropriated a trade-mark, to distinguish his goods from other similar goods, has a property right in it, a right that will be protected by injunction against the infringing party.   To entitle the plaintiff to a perpetual injunction, the imitation need not be exact or perfect.   To constitute an infringement it will be sufficient to show that the imitation is such as would be likely to mislead one in the ordinary course of purchasing the goods and lead him to suppose or believe that he was purchasing the genuine article.   It is not necessary to show that any one has in point of fact been deceived, nor is it, at this day, necessary to show intentional fraud."

In Oakes v. Candy Co., 146 Mo. l. c. 400, GANTT P. J., adopted the language of the Supreme Court of the United States in Lawrence Mfg. Co. v. Tenn. Mfg. Co., 138 U. S. 546, which in turn was quoted from Canal Co. v. Clark, 13 Wall. 322, as follows:   "In all cases where rights to exclu-

sive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of goods of one manufacturer or vendor as those of another; and that it is only when this false representation is directly or indirectly made that the party who appealed to a court of equity can have relief. This is the doctrine of all the authorities. Hence the trade-mark must either by itself, or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived."

In McLean v. Fleming, 96 U. S. 1. c. 251, it was said: "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled."

In Liggett & Meyers Tobacco Co. v. Finzer, 128 U. S. 182, the plaintiff asked that the defendant be enjoined from infringing its trade-mark. The court said, 1. c. 184: "The two stars, the one used by the complainant, and the one used by the defendant, are so different in form and surroundings, that it would not be possible for any person, not afflicted with color blindness, to mistake the one for the other. They differ in size and color. The star used by the complainant on its manufactured goods is only a little over half an inch in diameter, with a hole in the centre. The mark used by the defendant consists of a round paper label over three-fourths of an inch in diameter, with a red star, and the word 'Trade' on one side and the word 'Mark' on the other in gilded letters on a red background, and having beneath the star the word 'Light' thus forming by the figure and the letters the word 'Starlight.' One star has the silvery appearance of tin foil;

the other has the glare of a red and yellow gilded background. The judgment of the eye upon the two is more satisfactory than evidence from any other source as to the possibility of parties being misled so as to take one tobacco for the other; and this judgment is against any such possibility. Seeing in such case is believing; existing differences being at once perceived and remaining on the mind of the observer."

It is not necessary to further multiply authorities. The application of the principles announced to the facts in the case at bar solves the problem. "The judgment of the eye upon the two is more satisfactory than evidence from any other source as to the possibility of parties being misled so as to take one tobacco [cigar] for the other; and this judgment is against any such possibility. Seeing in such case is believing; existing differences being at once perceived and remaining on the mind of the observer." [Liggett & Meyers v. Finzer, *supra.*]

"The judgment of the eye" in this case, whether critically or casually applied, by an expert or by an unwary purchaser fails to detect any such similitude between the two trade-marks as would be likely to deceive any one. The main and most likely to attract attention feature of the plaintiff's trade-mark is the very faithful and prominent picture of the Union Station in St. Louis, while the most prominent feature of the defendant's trade-mark is the words "The Gilpin." No one would be likely to buy the one cigar under the impression created by the trade-mark on the box for the other cigar. The plaintiff's trade-mark no where discloses the name of the manufacturer of the cigar, except by the letters "D. N." burnt into the top of the lid of the box. The defendant's trade-mark on the inside of the top of the box and on the rear inside end of the box has in large letters the words "Wm. A. Stickney Cigar Co.," thereby im-

mediately directing even the most casual observation to the name of the manufacturer of the cigar. The fact that defendant's trade-mark has a small picture of the Union Station and the words "Union Station" on it is the only feature that bears any similarity to the plaintiff's trade-mark, and this is too small and insignificant to overcome the prominent and distinct characteristics between the two, and can not fairly be held to have been intended to deceive or to have actually deceived any one, and there is no proof of any fraudulent intent or actual deception in the case.

This conclusion renders it unnecessary to consider the other questions so ably argued by counsel, and leads to the affirmance of the judgment of the circuit court.    All concur.